**COVINGTON, Supt., Appellee and Cross–Appellant,**

**v.**

**LUCIA, Appellant; Fazekash, Cross–Appellee, et al.; Boyko.**

[Cite as *Covington v. Lucia,* 151 Ohio App.3d 409, 2003-Ohio-346.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–51.

Decided Jan. 28, 2003.

Jim Petro, Attorney General; Dinsmore & Shohl, L.L.P., George H. Vincent, Jerome C. Tinianow and Richard D. Porotsky, for appellee and cross-appellant.

Zeiger & Carpenter and David A. Wallace, for appellant.

Frost, Brown & Todd, L.L.C., Frederick J. McGavran and Vincent E. Mauer, for cross-appellee.

Roetzel & Andress and Donald S. Scherzer, for John Boyko.

LAZARUS, Judge.

{¶ 1} On January 11, 2001, J. Lee Covington II, Superintendent of the Ohio Department of Insurance, in his capacity as liquidator of Credit General Insurance Company and Credit General Indemnity Company ("CGIC" or "CGIND" respectively, or "Credit General" collectively), filed suit in the Franklin County Court of Common Pleas against three former officers and directors of the liquidated insurers, Robert J. Lucia, Gregory Fazekash, and John Boyko, alleging corporate mismanagement leading to insolvency and subsequent liquidation. The liquidator's complaint alleged diversion of funds, commingling of assets, improper recordkeeping and reporting, breach of fiduciary duty, negligence, conversion, unjust enrichment based on quasi-contract, preferential transfers, fraudulent transfers, and civil conspiracy.

{¶ 2} Fazekash and Lucia filed motions to stay proceedings pending arbitration. Fazekash's motion was based on an arbitration clause included in a severance agreement with Credit General entered into on June 10, 1999. Lucia based his motion on an arbitration clause contained in a 1992 employment agreement with Phoenix Insurance Group, Inc. ("Phoenix"), and subsequent amendments. The rights and obligations of Phoenix were later assumed by PRS Insurance Group, Inc. ("PRS"), a company that was owned entirely by Lucia. CGIC was a wholly owned subsidiary of Phoenix and/or PRS, and CGIND was a wholly owned subsidiary of CGIC. Lucia was the president and CEO of both CGIC and CGIND.

{¶ 3} Lucia's employment contract contained the following:

{¶ 4} "Employment agreement dated February 1, 1991, between The Phoenix Insurance Group, Inc., an Ohio corporation (the 'Company'), and Robert J. Lucia (the 'Employee').

{¶ 5} "* * *

{¶ 6} "14. *Arbitration.* Any dispute arising under this agreement shall only be settled by arbitration in the City of Cleveland, Ohio, in accordance with the rules of the American Arbitration Association and any judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof."

{¶ 7} According to the complaint, Fazekash had served as the treasurer, vice-president, and director of CGIC and CGIND prior to his resignation in June 1999. Fazekash's severance agreement stated:

{¶ 8} "11. *Arbitration.* Any dispute arising between the parties hereto shall be resolved by arbitration in Cleveland, Ohio (or such other location as mutually agreed) in accordance with the rules of the American Arbitration Association, and

the award of the arbitrator(s) shall be final and binding upon the parties. Each party shall bear its own costs and attorney's fees in connection with such arbitration."

{¶ 9} On December 13, 2001, the trial court filed its decision and entry granting the motion of defendant Gregory A. Fazekash to stay proceedings pending arbitration filed August 17, 2001, denying plaintiff's motion for leave to file a surreply memorandum in opposition to the motion of defendant Gregory A. Fazekash to stay proceedings pending arbitration served on August 16, 2001, filed November 7, 2001, and denying defendant Robert Lucia's motion to stay proceedings pending arbitration filed October 5, 2001. In its decision, the trial court reasoned that the arbitration clause in Fazekash's agreement was worded broadly enough to include the claims set forth in the liquidator's complaint. In addition, the trial court found that the liquidator was not arguing that the contract did not bind Credit General, but rather was seeking to disavow the severance agreement. The trial court reasoned that whether the contract was voidable was an issue for the arbitrator.

{¶ 10} With respect to Lucia's motion to stay proceedings, the trial court found that Lucia had not waived the right to assert arbitration as a defense. However, the trial court also found that there was nothing in the agreement itself to indicate that CGIC or CGIND were parties or intended third-party beneficiaries to the employment agreement between Lucia and the predecessor to PRS Insurance Group. Furthermore, the parties made several amendments to the agreement, but never indicated that the agreement included CGIC or CGIND. Accordingly, the trial court denied Lucia's motion.

{¶ 11} Lucia appealed to this court, assigning as error the following:

{¶ 12} "The trial court erred by refusing to stay proceedings and to refer plaintiff's claims to arbitration because the record evidence established that the arbitration provision in Lucia's employment agreement is susceptible to an interpretation covering plaintiff's claims."

{¶ 13} Recent Ohio Supreme Court precedent indicates that in general, arbitration is encouraged as a method to settle disputes. *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859. In addition, the Ohio Supreme Court has stated that a "presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision. An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." Id.

■ {¶ 14} Lucia's argument hinges on the interpretation to be given to his employment agreement with Phoenix. Relying on his affidavit, Lucia contends that the employment agreement governed his employment with PRS and the PRS "family," including CGIC and CGIND. Because Lucia received a single salary and a single benefits package as compensation for his work for all of the companies, he argues that it logically follows that CGIC and CGIND intended to be bound by and to receive the benefits of Lucia's efforts under the agreement. Lucia also notes that there is a single reference to "Credit General" in the agreement. Section 4.2 of the agreement states: "Employee shall have the right to own any other companies that do not directly compete with Credit General even though commission may be derived therefrom." Lucia argues that the absence of any other reference to CGIC or CGIND in the agreement or the amendments to the agreement implies that the parties were aware of CGIC and CGIND and did not need to specifically mention them to include them within the coverage of the agreement.

{¶ 15} The liquidator argues, however, that the agreement is not ambiguous and it is clear from the four corners of the document that Credit General was not a party or an intended third-party beneficiary to Lucia's employment agreement. The liquidator points out that the only evidence that Lucia's employment with CGIC and CGIND was governed by the agreement is his affidavit and that there is no other agreement before the court.

{¶ 16} As this court has recently stated, "we recognize that an analysis of whether a dispute falls within the scope of an arbitration agreement should logically follow the initial determination whether the parties ever entered into an agreement in the first place." *Duryee v. Rogers* (Sept. 23, 1999), Franklin App. No. 98AP–1255, 1999 WL 744341. With that thought in mind, we find that Lucia's employment agreement with Phoenix is a contract that must be interpreted under the same basic principles governing any other contract. In *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.* (1998), 129 Ohio App.3d 45, 55–56, 716 N.E.2d 1201, the Second District Court of Appeals recently reviewed the use of extrinsic evidence in interpreting a contract:

{¶ 17} " 'The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties * * * [which] is presumed to reside in the language they chose to employ in the agreement.' *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519, 526. Where the written instrument is unambiguous, a court must give effect to the parties' expressed intentions; unexpressed intentions are deemed to have no existence. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 922-923.

{¶ 18} "Contractual language is 'ambiguous' only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations. *Potti v. Duramed Pharmaceuticals, Inc.* (C.A.6, 1991), 938 F.2d 641, 647. If an ambiguity exists in a contract, then it is proper for a court to consider 'extrinsic evidence,' i.e., evidence outside the four corners of the contract, in determining the parties' intent. *Blosser v. Carter* (1990), 67 Ohio App.3d 215, 219, 586 N.E.2d 253, 255-256. Such extrinsic evidence may include (1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement. *Id.* However, courts may not use extrinsic evidence to create an ambiguity; rather, the ambiguity must be patent, i.e., apparent on the face of the contract. *Schachner v. Blue Cross & Blue Shield of Ohio* (C.A.6, 1996), 77 F.3d 889, 893."

{¶ 19} Here, Lucia has impermissibly attempted to create an ambiguity in the contract through the use of extrinsic evidence. Specifically, he has tried to create an ambiguity in the employment agreement based upon his assertions in his affidavit that the employment agreement governed his employment with CGIC and CGIND, and the benefits he received under the employment contract with Phoenix were also for his services to CGIC and CGIND. However, after reviewing the agreement, we determine that it is not ambiguous and, therefore, there is no reason to resort to extrinsic evidence to determine the parties' intent. Therefore, the trial court did not err in refusing to consider Lucia's affidavit as evidence of the parties' intent.

{¶ 20} Lucia argues further that a recent Ohio Supreme Court case stands for the proposition that the court can go outside the four corners of a contract in determining whether a nonsignatory to a contract can be bound by an arbitration provision.

{¶ 21} In *Gerig v. Kahn*, 95 Ohio St.3d 478, 2002-Ohio-2581, 769 N.E.2d 381, the Supreme Court of Ohio held that a defendant hospital, which was signatory to an affiliation agreement with the defendant physician, could enforce the affiliation agreement's arbitration provision against the nonsignatory plaintiff parents of an injured child and the Ohio Insurance Guaranty Association ("OIGA"). While the plaintiffs' medical malpractice claim was pending, the hospital's insurer was found to be insolvent and ordered into liquidation. The plaintiffs sought a declaration that the affiliation agreement between the hospital and physician required the hospital to insure the physician under its self-insurance plan up to $4 million, the limit provided by the insolvent insurer, rather than the $300,000 statutory limit provided by OIGA. OIGA sought a declaration that it was not required to pay any damages until the plaintiffs exhausted the hospital's health insurance. The

hospital, relying on an arbitration clause in the affiliation agreement, moved the court to stay proceedings in the medical malpractice action and declaratory judgment action, and instead sought an order compelling arbitration of its obligation to insure the physician under its self-insurance program. The Supreme Court of Ohio held that under principles of equitable estoppel, a signatory to a contract could enforce an arbitration provision against nonsignatories seeking a declaration of the signatories' rights and obligations under the contract.

{¶ 22} The overriding principle in *Gerig,* and the cases cited therein, is that when seeking to enforce rights under a contract, a nonsignatory can be bound by that contract's arbitration clause. That is not the case here. We note that, in this case, the liquidator is not attempting to enforce any rights under the contract between Lucia and Phoenix. Thus, *Gerig* does not provide any reason for this court to ignore cardinal rules of contract interpretation and go outside the four corners of the contract to ascertain the intent of the parties when the contract language is clear and unambiguous. Nor does *Gerig* stand for the proposition that the doctrine of equitable estoppel should apply, since the liquidator is not seeking to enforce the contract. Lucia's assignment of error is not well taken and is overruled.

{¶ 23} We now turn to the cross-appeal. The liquidator cross-appealed with respect to the decision granting Fazekash's motion, assigning as error the following:

{¶ 24} "The Trial Court erred in staying the Liquidator's claims against Defendant–Cross–Appellee Gregory Fazekash pending arbitration."

{¶ 25} Unlike Lucia's employment contract, Fazekash's severance agreement does specify CGIC and CGIND as parties, and contains a broadly worded arbitration clause that would encompass the allegations contained in the liquidator's complaint, assuming the liquidator is a successor to the parties and is bound by the contract. Recently, however, this court held that enforceability of an arbitration provision was not mandatory if enforcement would adversely affect the propriety of claims of creditors or adversely affect a party to the liquidation proceeding. *Covington v. Am. Chambers Life Ins. Co.,* 150 Ohio App.3d 119, 2002-Ohio-6165, 779 N.E.2d 833, ¶ 25-26.

{¶ 26} In this case, enforcement of Fazekash's arbitration provision would frustrate the purpose of the liquidation act. R.C. 3903.02(D) provides:

{¶ 27} "The purpose of sections 3903.01 to 3903.59 of the Revised Code is the protection of the interests of insureds, claimants, creditors, and the public generally, with minimum interference with the normal prerogatives of the owners and managers of insurers, through all of the following:

{¶ 28} "(1) Early detection of any potentially dangerous condition in an insurer, and prompt application of appropriate corrective measures;

{¶ 29} "* * *

{¶ 30} "(3) Enhanced efficiency and economy of liquidation, through clarification of the law, to minimize legal uncertainty and litigation."

{¶ 31} The liquidator brought a consolidated action in a court of law against the former senior officers who allegedly mismanaged the corporations. To permit Fazekash to have his action decided privately and separately from his fellow officers when the liquidator has disavowed the contract is contrary to the interests of insureds, claimants, creditors, and the public generally as well as the interest of the liquidator who in the pursuit of his duties represents them. "Enhanced efficiency and economy of liquidation" is not served by allowing Fazekash to have the claims against him heard in a separate forum with different discovery and evidentiary rules. To permit the officers and directors of a regulated industry to attempt to defeat the liquidation statutes by privately contracting to resolve allegations of corporate mismanagement in a private forum of their own choosing is contrary to the purposes of the liquidation act and prejudicial to the rights of policyholders and creditors who have been harmed by the insolvency of the corporations. Under these circumstances, the general policy favoring arbitration must yield to countervailing policies embodied in the liquidation act.

{¶ 32} Fazekash also argues that the liquidator became the successor to Credit General by virtue of the liquidation proceedings and, therefore, is bound by the severance agreement. While this court has recognized the principle that the liquidator stands in the shoes of the insolvent insurer, the liquidation act also confers upon the liquidator special powers to affirm or disavow contracts to which the insurer is a party. See *Covington v. Am. Chambers Life Ins. Co.*, 150 Ohio App.3d 119, 2002-Ohio-6165, 779 N.E.2d 833; R.C. 3903.21(A)(11). The liquidator has made it abundantly clear that he has no desire to become a successor to Fazekash's severance agreement and, in fact, as the trial court noted, the liquidator seeks to disavow the severance agreement. The cross-assignment of error is, therefore, well taken and is sustained.

{¶ 33} Based on the foregoing, Lucia's assignment of error is overruled, the liquidator's cross-assignment of error is sustained, and the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded for further proceedings in accordance with this opinion.

*Judgment accordingly.*

DESHLER and KLATT, JJ., concur.