OPINION
{¶ 1} Appellant, Mount Zion Fellowship Church ("Mount Zion"), appeals from the judgment entry of the Lake County Court of Common Pleas finding it in breach of an oral construction contract entered between itself and appellee, Pricom Asphalt Sealcoating ("Pricom").
 {¶ 2} In 2002, as part of a larger construction project, Mount Zion decided to pave a parking lot measuring 28,000 square feet. Pricom was engaged in other work for Mount Zion and was asked to bid on the job. Pricom contacted Euclid Asphalt Paving Company ("Euclid"), a subcontractor, and presented blueprints from which Euclid could estimate the cost. Euclid provided Pricom with a quote and Pricom submitted a bid to Mount Zion for a total of $47,000. Mount Zion accepted the bid and signed a written contract with Pricom.
 {¶ 3} Euclid commenced paving the 28,000 square foot area; during this process, Euclid's president, Anthony Russo, noticed an area adjacent to, but outside the initial measurements. Russo spoke with Todd Tornstrom, Pricom's president, regarding the whether Mount Zion desired this additional area paved. Tornstrom contacted his office manager and asked her to call Mount Zion to determine whether it wanted the additional work done. Russo measured the additional area (18,000 square feet) and told Tornstrom he would charge the same amount per square foot as he had for the original 28,000 square foot area ($1.26 per sq. ft.). According to Tornstrom, Mount Zion assented to the work and Russo moved forward with the additional paving. All said, Euclid paved 46,000 square feet.
 {¶ 4} Once the work was finished, Pricom submitted a bill for $72,900, the cost of the entire 46,000 square feet. Mount Zion disputed the bill and maintained it was obligated to pay only $47,000, the amount set forth in the original, written contract. In Mount Zion's estimation, the additional 18,000 feet was included in the original contract under an amount designated "additional area." The cost of the "additional area" was listed at $800. While the nature of the "additional area" is not entirely clear, Pricom maintained the charge was for "curves and lining." A handwritten notation stating "include curves and lining" appears above the $800 "additional area" charge.
 {¶ 5} Prior to the commencement of the instant litigation, Mount Zion had paid Pricom $47,000, the amount set forth in the written agreement. However, pursuant to its billing invoice, Mount Zion still owed $25,900 for the additional work. Moreover, Pricom paid Euclid $43,000 for its work as subcontractor. However, at the time of the litigation, Pricom still owed Euclid $17,100 for performing the additional work.
 {¶ 6} On September 22, 2003, Euclid filed a complaint against Mount Zion and Pricom for breach of contract. On December 5, 2003, Pricom filed its answer and a cross-claim against Mount Zion for breach of contract. On December 18, 2003, Mount Zion filed its answer to Pricom's cross-claim. On the same date, Mount Zion filed a motion for leave to file its answer and cross-claim instanter. Euclid opposed Mount Zion's motion and sought default judgment; however, on January 2, 2004, the trial court denied Euclid's motion for default judgment and permitted Mount Zion to file its answer and cross-claim instanter. On January 8, 2004, Mount Zion filed its answer to Euclid's complaint and cross-claim for reimbursement from Pricom in the event it is held liable to Euclid.
 {¶ 7} On August 27, 2004, the matter was tried to the bench. On September 22, 2004, the trial court filed its judgment entry granting judgment to Pricom against Mount Zion for $25,900 plus costs and interests. The court also awarded judgment in Euclid's favor against Pricom in the amount of $17,100, plus costs and interests. Mount Zion's cross-claim against Pricom was dismissed.
 {¶ 8} Mount Zion now appeals and asserts seven assignments of error for our review.
 {¶ 9} Before addressing its assigned errors, we must mention Mount Zion's brief fails to comply with App.R. 19(A) which requires appellate briefs to be double spaced. Although we do not hold this oversight fatal, we beseech all parties to consult the appellate rules before submitting their briefs to the court.
 {¶ 10} Mount Zion's first assignment of error asserts:
 {¶ 11} "[1.] The trial court erred when it considered parol evidence to change a contract clear and unambiguous on its face."
 {¶ 12} Mount Zion contends the trial court improperly considered extrinsic evidence to interpret the clear and unambiguous contract in violation of the parol evidence rule. Although Mount Zion alleges the trial court used parol evidence, the trial court's September 22, 2004 judgment entry states:
 {¶ 13} "Where there exists a written contract, the express terms of the contract must be followed and oral agreements outside of the written contract may not be used to modify the contract or explain its terms. Shifrin v. Forest CityEnterprises, Inc. 64 Ohio St.3d 635, 638, 1992-Ohio-28. Likewise, parol evidence is not admissible to explain contract terms unless the contract is ambiguous. Id. The court finds the contract between Mount Zion and Pricom is clear and the terms are not ambiguous."
 {¶ 14} Clearly, the trial court's judgment entry nominally belies Mount Zion's challenge. However, with respect to the issue of ambiguity, we find both the trial court's and Mount Zion's position problematic.
 {¶ 15} The contract provides for paving of 28,000 square feet at a cost of $46,200. At the bottom of the contract, the phrase "additional area" appears for which Pricom charged $800. Further, hovering in the right margin of the contract are the handwritten words "curves and lining include." The total cost listed on the contract is $47,000. The trial court maintained the contract is clear and unambiguous because the only reference to paving is in relation to a 28,000 square foot area whose cost is $46,200. Alternatively, Mount Zion argues the agreement is clear and unambiguous because "additional area" referred to in the contract denoted the extra 18,000 square feet of paving. One thing is clear, these two competing interpretations demonstrate the contract is not unambiguous.
 {¶ 16} The parol evidence rule states: "absent fraud mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." Galmish v. Cicchini,90 Ohio St.3d 22, 26, 2000-Ohio-7, quoting 22 Williston Contracts, (4th Ed. 1999), 569-570, Section 33:4. However, "[w]here a term is ambiguous, parol evidence is admissible to interpret, but not contradict, the express language of the contract." Sherock v. Ohio Mun. League Joint Self-Ins. Pool,
11th Dist. No. 2003-T-0022, 2004-Ohio-1515, at ¶ 16.
 {¶ 17} Here, the contract in question is reasonably susceptible to more than one interpretation, i.e. one could reasonably find the agreement ambiguous by virtue of the undefined character of the phrase "additional area." As we examine the trial court's application of law in a breach of contract action de novo, Kaufman v. Byers, 159, Ohio App.3d 238, 246, 2004-Ohio-6346, we hold the trial court erred in its determination that the September 15, 2002 contract was clear and unambiguous. However, the court's conclusion in this respect was not prejudicial as its decision was informed by its evaluation of the factual evidence.
 {¶ 18} With respect to factual determinations, the trial court is in the best position to "view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80. We therefore indulge every reasonable presumption in favor of a trial court's judgment regarding its underlying findings of fact and if the evidence supports more than one interpretation, we shall give deference to the lower court's credibility determinations. Id. Accordingly, where a contract is ambiguous, we will not overturn the trial court's interpretation absent a showing of an abuse of discretion. Ohio Historical Soc.v. Gen. Maintenance and Eng. Co. (1989), 65 Ohio App.3d 139,146.
 {¶ 19} Here, Anthony Russo, president of Euclid Asphalt, testified he was notified about this job through Todd Tornstrom, president of Pricom. Russo went to the job site and conducted a field measurement from a blueprint provided by Tornstrom. Russo measured the area to be paved at 28,000 square feet. Based upon his measurement, Russo submitted an estimate for the work and materials which Tornstrom accepted. After Russo began work, he noticed an area just north of the measured area. He spoke with Tornstrom regarding whether Mount Zion wanted this additional area paved.[1] Russo measured the additional area and determined it would require 18,000 square feet of additional paving. Russo testified Tornstrom subsequently received confirmation from Mount Zion for Russo to move forward with the additional work.
 {¶ 20} Todd Tornstrom testified the written contract contemplated 28,000 square feet of paving with curbs and lining included. Tornstrom testified all the work contemplated by that agreement was completed. Tornstrom also testified Russo encountered an additional area which appeared to require paving. This area measured a total of 18,000 square feet. Russo contacted Tornstrom regarding whether Mount Zion wanted this additional area paved. Tornstrom called his office manager who, in turn, received authorization for the extra paving from Hilman Lindsay, Mount Zion's chief financial officer and the party who negotiated the work for Mount Zion. Tornstrom testified his officer manager entered into a "verbal agreement" with Mr. Lindsay to move forward with the extra 18,000 square feet of paving.
 {¶ 21} Hilman Lindsey testified he explained to Tornstrom that another contractor had bid $51,000 to do the paving job. In response, Tornstrom stated he would do it for $47,000. The contract reflected this arrangement and specifically provided that 28,000 feet of paving would cost $46,200. Notwithstanding this documentation, Lindsey stated he believed the contract included the entire 46,000 square feet. On cross-examination, Lindsey admitted the contract explicitly stated 28,000 square feet would be paved for $47,000. Lindsey also recognized that 46,000 square feet was paved in spite of the contractual language.
 {¶ 22} While the evidence considered by the trial court was outside the scope of the written contract, it does not contradict the substantive provisions of the written contract. The evidence submitted at trial supports the court's conclusion that a second, oral contract was entered by Pricom and Mount Zion subsequent to the commencement of the paving. Accordingly, the extrinsic evidence was properly considered under the parol evidence rule. We believe the trial court's adjudication of the matter was supported by the adequate, credible evidence and therefore neither arbitrary nor unreasonable. We do not believe the trial court erred when it held the September 15, 2002 contract did not include the extra 18,000 square foot paving work. The trial court did not abuse its discretion and Mount Zion's first assignment of error is overruled.
 {¶ 23} "[2.] The trial court erred in finding that Pricom claims that Mount Zion requested a bid for the extra work as against the manifest weight of the evidence."
 {¶ 24} In C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, at the syllabus, the Supreme Court of Ohio stated:
 {¶ 25} "Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."
 {¶ 26} In its judgment entry, the trial court asserted "Pricom claims that Mount Zion requested a bid for the extra work, for which Euclid made an additional quote." Mount Zion maintains no credible evidence was asserted to establish this finding. We disagree.
 {¶ 27} After cross examination by Mount Zion's counsel, the court sought the following clarification from Tornstrom:
 {¶ 28} "THE COURT: Now Mr. Tornstrom, I'm confused about the testimony you just gave. Now when counsel cross-examines you as [Mount Zion's counsel] examined you did you testify that you did not contact the church after the plaintiff, Mr. Russo had contacted you and told you that there was additional work and I thought your testimony was I didn't contact the church I just gave Mr. Russo the approval.
 {¶ 29} "THE WITNESS: No, I, once I was contacted by Mr. Russo regarding the additional work I then contact my office manager and said please call the folks at the church, tell them there is additional work and there will be additional cost at which time she then got back to me saying what would the additional cost be. I then talked with Mr. Russo, he said it would be the same square footage price we're doing meaning we're not going to charge them more for the same type work, more on a per square foot unit basis. She got back to them they told her to go ahead and proceed on the work."
 {¶ 30} The implication of Tornstrom's testimony is Pricom's office manager called Mount Zion regarding the extra work. Upon contact, Mount Zion asked what the cost would be. Seeking information of this sort could be reasonably construed as seeking a bid for the extra work. In our view, the trial court did not err when it found Pricom "claimed" Mount Zion requested a bid for the extra 18,000 square feet. Mount Zion's second error is without merit.
 {¶ 31} "[3.] The trial court erred in finding an oral contract for additional work as being against the weight of the evidence."
 {¶ 32} Under its third assignment of error, Mount Zion contends Pricom failed to put forth adequate, credible evidence that the parties reached a binding oral agreement regarding the extra paving. Mount Zion maintains Pricom failed to offer evidence that the parties specifically agreed to a square footage measurement for the paving upon which the alleged oral agreement was based. Without measurements, the parties never reached an agreement on the total cost of the work, an essential term of the alleged agreement, and therefore the contract is indefinite and legally inadequate.
 {¶ 33} For a contract to be enforceable there must be a meeting of the minds of the parties to the contract. Allgood v.Procter Gamble Co. (1991), 72 Ohio App.3d 309, 311. A valid contract must also be clear as to its essential terms. Id. In a contract for services rather than goods, the essential terms are the parties and the subject matter. Turner v. Langenbrunner,
12th Dist. no. CA2003-10-099, 2004-Ohio-2814, at ¶ 26, citing,Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 13. Accordingly, the failure to specify the price or amount of compensation for services does not render a contract for services void for uncertainty. Id., see, also, Smitko v. Schiano (June 17, 1988), 11th Dist. No. 1370, 1988 Ohio App. LEXIS 2326, at 17. As to this issue, the Supreme Court of Ohio has commented: "[A] reference to the amount of the debt is not necessary, provided there is no uncertainty as to the debt referred to. The amount may be ascertained from other testimony." In re Estate of Butler
(1940), 137 Ohio St. 96, 112.
 {¶ 34} While Pricom did not testify Mount Zion knew the square footage for the additional paving when Mount Zion assented for the work to proceed, evidence was presented regarding the actual debt at trial. Testimony indicated Mount Zion was privy to the amount charged for each additional square foot at the time the parties entered into the oral contract and all parties agreed, at trial, the extra work involved additional paving of 18,000 square feet. Moreover, as discussed in Mt. Zion's first assignment of error, both Russo and Tornstrom testified as to the formation of the agreement for the paving of the additional 18,000 square foot area.
 {¶ 35} There was competent, credible evidence of the identity of the parties, a meeting of the minds, and an identification of the subject matter to the contract. Therefore, the trial court's determination regarding the formation of an oral contract is not against the weight of the evidence. Mount Zion's third assignment of error lacks merit.
 {¶ 36} "[4.] The trial court erred in considering hearsay evidence barred by Evidence Rule 804(B)(5)."
 {¶ 37} Hearsay evidence is generally inadmissible at trial unless provided for by the Rules of Evidence. Evid.R. 802. Evid.R. 804(B)(5) is one such exception to the general ban of hearsay testimony, and provides that a statement of a deceased person is not excluded by the hearsay rule where: "(a) the estate or personal representative of the decedent's estate * * * is a party; (b) the statement was made before the death * * *; (c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent * * *." Evid.R. 804(B)(5). All three requirements must be met in order for hearsay to be admissible pursuant to Evid.R. 804(B)(5). Drew v.Marino, 9th Dist. No. 21458, 2004-Ohio-1071, at ¶ 9.
 {¶ 38} "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). A `"statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion." Evid.R. 801(A). During his testimony, Tornstrom alluded to Dannacoutis as a party who communicated with appellant regarding the extra work; however, Mount Zion points to no "statements" ascribed to Dannacoutis by Tornstrom regarding the transaction(s) at issue. Because Mount Zion fails to point to any particular assertive "statement" ascribed to Dannacoutis, we hold there is no hearsay problem. Mount Zion's fourth assignment of error lacks merit.
 {¶ 39} We shall address Mount Zion's fifth and sixth assignments of error together, they assert:
 {¶ 40} "[5.] The trial court erred in finding an additional amount of $10,000 due for extra work of striping the parking lot after it was paved as against the weight of the evidence.
 {¶ 41} "[6.] The trial court erred in awarding an amount of money in excess of defendant Pricom's prayer for $18,303.35."
 {¶ 42} Under its fifth and sixth assigned errors, Mount Zion maintains the trial court erred in awarding an amount over and above the damages sought in Pricom's cross-complaint; Mount Zion further argues the trial court erred in its itemization of the damages as it relates to "extra work." We agree.
 {¶ 43} At trial, Pricom submitted an invoice dated November 14, 2002 indicating Mount Zion owed $72,900 on its account: The original contract for 28,000 square feet for $47,000 plus the additional 18,000 square feet for $25,900. Testimony indicated that Mount Zion paid the original $47,000 upon completion of the work. In its cross-complaint, Pricom asserted Mount Zion owed $18,303.35 on its account. This figure is supported by a March 21, 2003 invoice which was attached to the cross-complaint. Pricom's cross-complaint and its exhibits indicate Mount Zion, at some point between November 14, 2002 and March 21, 2003, paid an additional $7,596.65 ($25,900-$18,303.35). Nothing in the record indicates Mount Zion currently owes Pricom $25,900. The only evidence of Mount Zion's current debt is reflected in Pricom's cross-complaint, i.e., $18,303.35. The trial court accordingly erred in awarding Pricom the full $25,900, an amount $7,596.65 over and above the amount Pricom claimed it was owed.
 {¶ 44} Further, there is no record evidence to support the trial court's determination that Pricom was entitled to $10,000 for "extra work of striping the parking lot." There was no testimony indicating that Pricom charged Mount Zion this amount or that "striping the parking lot" could be valued at $10,000. The record shows Pricom originally billed Mount Zion for $72,900 for the entire 46,000 square feet. The bill was not itemized and there was no testimony to support the trial court's assessment. The trial court's conclusion is arbitrary and without foundation.
 {¶ 45} Because there was no record evidence to support the trial court's conclusions regarding damages, we hold Mount Zion's fifth and sixth assignments of error have merit.
 {¶ 46} "[7.] The trial court erred in finding unjust enrichment where the evidence preponderates that all 46,000 square feet were part of the original contract."
 {¶ 47} In its final assignment of error, Mount Zion contends that the court erred in finding it was unjustly enriched as the entire 46,000 square feet was part of the original written contract.
 {¶ 48} In our analysis of Mount Zion's first assignment of error, we determined the evidence put forth at trial supported the court's conclusion that a second, oral contract was entered into subsequent to the commencement of the paving. Specifically, the evidence was undisputed that 46,000 square feet of Mount Zion's parking lot was paved. The September 15, 2002 written contract established Pricom would cause 28,000 square feet to be paved. Evidence adduced at trial showed an additional 18,000 square feet was paved subsequent to the signing of the original contract. Further, the court heard testimony indicating Mount Zion, through Hilman Lindsay, agreed to pay for the extra 18,000 square feet of paving after the parties entered into the original written contract. Mount Zion has retained the benefit of the additional work but did not tender payment for the services. Thus, Mount Zion stands in breach of the oral contract into which it entered for the additional work. In this respect, Mount Zion's claim that the entire 46,000 square foot paving job was part of the original contract has been decided and overruled.
 {¶ 49} However, we have not addressed Mount Zion's denial that it was unjustly enriched.
 {¶ 50} In its September 22, 2004 judgment entry, the trial court determined:
 {¶ 51} "* * * the oral contract bound Mount Zion to pay for the additional work. Even if there is some ambiguity in the oral contract of what Mount Zion was to receive from Pricom, Mount Zion has waived any such claim by accepting work and using the finished product for two years without complaint. Mount Zion has been enriched by Pricom carrying out the work requested by Mount Zion. Therefore, as Mount Zion has received the benefit of the work performed, it is responsible to pay for the additional work."
 {¶ 52} Although the court noted Mount Zion was "enriched" by Pricom, it did not state Mount Zion was "unjustly enriched." Unjust enrichment is an equitable principle which holds that no person should retain a benefit which would result in inequity and injustice. City of Girard v. Leatherworks Partnership, 11th Dist. No. 2004-T-0010, 2005-Ohio-4779, at ¶ 41. However, "[t]he doctrine of unjust enrichment does not apply when a contract actually exists; it is an equitable remedy applicable only when the court finds there is no contract." All Occasion Limousine v.HMP Events, 11th Dist. No. 2003-L1-40, 2004-Ohio-5116, at ¶ 25. Because the court found a binding oral contract, the doctrine of unjust enrichment is inapplicable. In this respect, Mount Zion's seventh assignment of error involves a misreading of the trial court's judgment entry and is accordingly overruled.
 {¶ 53} For the aforementioned reasons, Mount Zion's first, second, third, fourth, and seventh a seven assignments of error are without merit; however, Mount Zion's fifth and sixth assignments of error, relating to the trial court's award of damages, are sustained. Therefore the judgment of the Lake County Court of Common Pleas is hereby reversed and the matter remanded to the trial court for a re-calculation of damages.
O'Toole, J., concurs.
O'Neill, J., dissents with Dissenting Opinion.
[1] Russo testified he had a business relationship with Tornstrom from approximately 10 years. During the course of this relationship, Tornstrom would often refer work to Russo as a subcontractor without Russo dealing directly with the third party. Russo further testified work orders many times change while a construction job is in progress. When this happens, Russo stated oral agreements on modifications are a "pretty common practice."