[Cite as *Career & Technical Assn. v. Auburn Vocational School Dist. Bd. of Edn.*, 2014-Ohio-1572.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| CAREER & TECHNICAL ASSOCIATION, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2013-L-010** |
| AUBURN VOCATIONAL SCHOOL DISTRICT BOARD OF EDUCATION, | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 11 CV 003318.

Judgment:  Reversed and remanded.


*Charles W. Oldfield* and *Ira J. Mirkin,* Green, Haines & Sgambati Co., L.P.A., 100 Federal Plaza East, Suite 800, Youngstown, OH  44503 (For Plaintiff-Appellant).

*Christian M. Williams* and *Megan D. Maurer,* Pepple & Waggoner, Ltd., Crown Centre Building, 5005 Rockside Road, Suite 260, Cleveland, OH  44131-6808 (For Defendant-Appellee).


CYNTHIA WESTCOTT RICE, J.

{¶1}    Appellant, Career & Technical Association ("the association") appeals the summary judgment entered against it and in favor of appellee, Auburn Vocational School District Board of Education ("the board"), by the Lake County Court of Common Pleas on the association's complaint for breach of the parties' collective bargaining agreement ("CBA").  At issue is whether a material issue of genuine fact exists

regarding whether the CBA entitled the association's member teachers to a stipend for not having a "planning period" during their instructional work day. For the reasons that follow, we reverse and remand for further proceedings consistent with this opinion.

{¶2} The board is the governing authority of the Auburn Vocational District and Auburn Career Center. The board is responsible for the operation, management, and administration of the public schools within the district, which consist of a vocational high school and an adult workforce program. The association is the bargaining representative for the board's teaching staff.

{¶3} The statement of facts that follows is derived from the depositions of the parties' representatives. Thomas Schultz, the district's superintendent from 1998 to 2009, testified that, prior to 2011, the school day at the Auburn Vocational School consisted of eight instructional 45-minute periods and a lunch period. Some teachers had eight instructional periods, while others had less. Teachers with less than eight instructional periods had one non-instructional planning period at some time during the instructional periods. In contrast, those teachers with eight instructional periods were required to engage in these planning activities on their own time.

{¶4} Robert Hill, teacher and association president, testified that, in order to address this difference in instructional work, the district and the teachers' former bargaining representative agreed in 2000 that those teachers who had contact with students during all eight instructional periods would receive an additional 10 per cent of their annual salary, the so-called "eighth period stipend," to compensate them for the planning work they had to perform on their own time.

{¶5} Rodney Kozar, teacher and lead negotiator for the association, testified that, prior to the negotiations for the CBA in 2009, the board had implemented the eighth period stipend for teachers who instructed students during all eight instructional periods. In contrast, teachers who did not instruct students during all eight periods did not receive the stipend. He said the "common understanding" of the stipend was that if [a teacher] had student contact every period of the day when students were in the building[, the teacher] would receive the eighth period stipend."

{¶6} Similarly, Mr. Hill testified: "Eighth period stipend means that as a teacher I teach all periods of the day and I don't have a prep period during the day so I would receive the stipend."

{¶7} Carolyn Bennett, the board's treasurer, testified that during the parties' negotiations for the 2009-2012 CBA, they agreed to memorialize the past practice of paying the eighth period stipend in the CBA exactly as it had worked in the past. The CBA was adopted in October 2009. Section 21.4, entitled, "Eighth Period Stipend," provides: "Teachers who are assigned classroom instruction duties in lieu of a planning period shall be compensated at a rate of 10% of the teacher's annual salary."

{¶8} Mr. Hill stated in the association's answers to the board's interrogatories:

{¶9} This contract language itself as well as the past practices of the parties * * * establish that it was to ensure that teachers will have no more than seven periods of instructional time without at least one planning period during their instructional work day, unless they are compensated at the rate of 10% of their annual salaries for the additional instructional time.

3

{¶10} Further, Michael Evans, who was a teacher at the school from 2004 to 2011, testified the eighth period stipend means that any teacher who taught eight periods without a break or 45-minute planning period within the eight periods would get the eighth period stipend for teaching all eight periods. He said that planning period means, "Forty-five minutes of not teaching. So you had a free period within that eight periods." Mr. Evans said he first heard about the eighth period stipend "well before [the] negotiations. It was a past practice." Mr. Evans also testified that Section 21.4 was meant to memorialize this past practice.

{¶11} Following adoption of the CBA, the board continued to follow the provision allowing for the eighth period stipend and paid the stipend during the 2009-2010 and 2010-2011 school years to eligible teachers as it had done since 2000. Then, for the 2011-2012 school year, in order to eliminate the eighth period stipend, the district changed the start of classes from 8:00 a.m. to 8:20 a.m. Since the teachers started their work day at 7:30 a.m., the board required all teachers to attend a planning period from 7:30 a.m. to 8:15 a.m.

{¶12} Superintendent Margaret Lynch testified that in August 2011, the district notified all district teachers of the new planning period, thus effectively abrogating the contract provision regarding payment of the eighth period stipend.

{¶13} The association filed a grievance, claiming the board violated the collective bargaining agreement by unilaterally creating a planning period before the beginning of classes and no longer paying the stipend. The board denied the grievance. Pursuant to the CBA's grievance procedure, the association then filed a complaint in the trial court alleging a breach of Section 21.4 of the collective bargaining agreement. The

association alleged that, since the beginning of the 2011-2012 school year, the board breached this section by refusing to pay the stipend to its teachers who were assigned eight periods of classroom instruction. The association prayed for a declaration that the board had breached the CBA, an injunction ordering the board to comply with Section 21.4 by paying its members for eight assigned periods of classroom instruction, and an award of all lost wages resulting from the board's breach of the CBA. The board filed an answer denying the material allegations of the complaint.

{¶14} The parties engaged in discovery, including written discovery and depositions. Upon completion of discovery, the parties filed competing motions for summary judgment. The trial court denied the association's motion and granted summary judgment to the board. The association appeals, asserting the following for its sole assignment of error:

{¶15} "The trial court erred when it granted Appellee's motion for summary judgment and denied Appellant's motion for summary judgment."

{¶16} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "there is no genuine issue as to any material fact" to be litigated; (2) "the moving party is entitled to judgment as a matter of law;" and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

{¶17} A trial court's decision granting summary judgment, like other questions of law, is reviewed by an appellate court under a de novo standard of review. *Grafton v.*

5

*Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). A de novo review requires the appellate court to conduct an independent review without deference to the trial court's decision. *Mack v. Ravenna Men's Civic Club*, 11th Dist. Portage No. 2006-P-0044, 2007-Ohio-2431, ¶12.

{¶18} A contract can only be interpreted if the provisions are ambiguous or uncertain. *Salvato v. Salvato*, 11th Dist. Trumbull No. 2013-T-0024, 2013-Ohio-5268, ¶39. Contract language is ambiguous if it is susceptible to two or more reasonable interpretations. *Covington v. Lucia*, 151 Ohio App.3d 409, 2003-Ohio-346, ¶18 (10th Dist.), citing *Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir.1991). Further, a contract provision is ambiguous where one could reasonably find it is susceptible to two or more reasonable interpretations because a material phrase in the provision is undefined. *See Euclid Asphalt Paving Co. v. Pricom Asphalt Sealcoating, Inc.*, 11th Dist. Lake No. 2004-L-175, 2005-Ohio-7049, ¶17. The determination of whether provisions in a contract are ambiguous is a legal issue that we review de novo. *Euclid Asphalt Paving Co.*, *supra*. However, if the contract language is capable of two reasonable interpretations, there is an issue of fact as to the parties' intent. *Salvato*, *supra*, at ¶40. When a contract term is ambiguous, the court must examine parol or extrinsic evidence to determine the parties' intent. *Euclid Asphalt Paving*, *supra*, at ¶16. Such extrinsic evidence may include the circumstances surrounding the parties at the time the contract was made and the objectives the parties intended to accomplish by entering into the contract. *Covington*, *supra.*

**{¶19}** We must therefore determine whether Section 21.4 of the parties' CBA is ambiguous, thus creating an issue of fact as to the parties' intent and precluding summary judgment. Section 21.4 provides:

**{¶20}** Eighth Period Stipend

**{¶21}** Teachers who are assigned classroom instruction duties in lieu of a planning period shall be compensated at a rate of 10% of the teacher's annual salary.

**{¶22}** The trial court concluded that, according to Section 21.4, the district was entitled to stop payment of the eighth period stipend to its teachers by providing them with a planning period in the morning prior to the start of classes. However, in reaching this conclusion, the court ignored the ambiguity presented by this section and the parol evidence concerning the meaning of this provision.

**{¶23}** First, the language used in Section 21.4 is reasonably susceptible to more than one interpretation. The phrase, "teachers who are assigned to classroom instructional duties in lieu of a planning period," can be taken to mean that a teacher is entitled to the stipend if the teacher has classroom instructional duties during all instructional periods without a planning period at some time during the eight instructional periods (as the association argues). Under this interpretation, the planning period created by the board between 7:30 a.m. and 8:15 a.m. for the 2011-2012 school year does not qualify as a planning period because teachers are not assigned instructional duties in that time slot. Alternatively, this section can be taken to mean that, as long as teachers are given a planning period at any time of the day, even prior

to the start of class, they are not entitled to the stipend (as the board argues). For this reason alone, Section 21.4 is ambiguous.

{¶24} Further, the term, "eighth period stipend," is not defined in the CBA or Ohio law in terms of when the planning period must occur. Thus, it is unclear from the CBA whether the planning period must take place during one of the instructional periods or whether it can occur when the students are not at school. For this additional reason, this section is ambiguous.

{¶25} Second, in interpreting Section 21.4, the trial court ignored the title of this section, "Eighth Period Stipend." Titles of provisions in a contract are an integral part of a contract and, unless the contract provides otherwise, must be considered in determining the meaning of the provisions. *Industrial Indemnity Co. v. United States,* 14 Cl. Ct. 351, 356 (1988).

{¶26} Moreover, the title, "Eighth Period Stipend," is obviously not a common term understood by the general public; rather, it is a technical term whose meaning is not apparent to one who is unfamiliar with the vocational teaching profession and the parties' past practice. In fact, the board concedes on appeal that the term, "Eighth Period Stipend," is "unexplained" and susceptible to at least one interpretation not intended by either party. Also, any attempt to define the title by separately defining each of its words would be futile since, while each word has a common meaning, together, they convey a technical, specialized meaning.

{¶27} This court has held that "'a word having a technical legal sense will be so construed unless a different intention is clearly expressed.'" *Manufacturing Mgmt. Sys. v. Data Solutions, Inc.*, 11th Dist. Lake Nos. 11-074, 11-076, 1987 Ohio App. LEXIS

8

6173, *4 (Mar. 20, 1987), quoting 18 Ohio Jurisprudence 3d 28, Contracts, Section 143. Further, a term or phrase that has a technical meaning in the business to which the contract relates must be interpreted according to that meaning. *Manufacturing, supra*, at *5.

{¶28} Moreover, this court in *Manufacturing, supra*, at *5-*6, quoted with approval the Restatement of Law Second Contracts 2nd, Section 202, regarding the interpretation of technical contract terms, as follows: "technical terms and words of art are given their technical meaning when used in a transaction within their technical field."

{¶29} Further, in *Manufacturing, supra*, this court stated that "parol evidence can be introduced to explain technical terms" used in a written contract. *Id.* at *7. This court also stated: "'Parol evidence * * * is always admissible to define and explain the meaning of words or phrases in a written instrument which are technical or where a word or phrase is used in a peculiar sense that is applicable to a particular industry or trade.'" *Id.*, quoting *Sierra Life Ins. Co. v. First National Life Ins. Co.*, 512 P.2d 1245, 1247 (1973).

{¶30} Further, past practice is commonly used to explain technical or ambiguous terms in a contract. *Perry v. Million Air*, 943 F.2d 616, 619 (6th Cir.1991); *United Mercury Mines Co. v. Bradley Mining Co.*, 259 F.2d 845, 848 (9th Cir.1958); *American Sugar Refining Co. v. Colvin Atwell & Co.*, 286 F. 685, 689 (W.D.Pa.1923).

{¶31} "To be binding on parties to a collective bargaining agreement, a past practice must be (1) unequivocal, (2) clearly enunciated, and (3) followed for a reasonable period of time as a fixed and established practice accepted by both parties."

*Assn. of Cleveland Fire Fighters, Local 93 of the Intl. Assn. of Fire Fighters v. Cleveland*, 99 Ohio St.3d 476, 2003-Ohio-4278, syllabus.

**{¶32}** In the instant case, the association presented parol evidence, including evidence of the parties' past practice, to explain the term "eighth period stipend." Rodney Kozar, teacher at Auburn for nine years and lead negotiator for the association, testified that the "common understanding" of the eighth period stipend was that "if [*a teacher*] *had student contact every period of the day when students were in the building* [, the teacher] would receive * * * the eighth period stipend." (Emphasis added.)

**{¶33}** Similarly, Robert Hill, Auburn teacher for 23 years and association president, testified that, beginning in 2000, teachers were paid the stipend if they had contact with students during each of the eight instructional periods. Mr. Hill further testified: "Eighth period stipend means that as a teacher I teach all periods of the day and I don't have a prep period during the day so I would receive the stipend."

**{¶34}** Further, Michael Evans, teacher at Auburn for nine years, testified the eighth period stipend means that "any teacher that would be teaching eight periods without a break or planning period * * * would get the eighth period stipend for teaching all eight periods." He said that planning period means, "[f]orty-five minutes of not teaching. So you had a free period within [the] eight periods." Mr. Evans said he first heard about the eighth period stipend "well before [the 2009 CBA] negotiations. It was a past practice." He said that Section 21.4 was meant to memorialize this past practice.

**{¶35}** Finally, Carolyn Bennett, the board's treasurer, testified the parties agreed "to memorialize the eighth period stipend in the [2009-2012 CBA]" and that the CBA did not change in any way how the stipend had worked in the past.

10

**{¶36}** In summary, the language used in Section 21.4 of the CBA regarding the eighth period stipend is susceptible to two or more reasonable interpretations with respect to when the planning period must be provided for the board to avoid having to pay the stipend. Further, the term "eighth period stipend" is a technical term that is not defined in the CBA or Ohio law. We therefore hold that Section 21.4 is ambiguous and that a fact issue exists as to the parties' intent concerning the meaning of this provision. Thus, the trial court was required to consider the parol evidence that Section 21.4 was intended to memorialize the parties' past practice of paying the stipend to teachers if they taught during all eight instructional periods without a planning period during those periods. Since the planning period created by the district for the 2011-2012 school year takes place prior to the start of the instructional periods, a fact issue also exists as to whether the board breached Section 21.4 by refusing to pay the stipend. We therefore hold the trial court erred in granting summary judgment to the board.

**{¶37}** For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings consistent with the opinion.

COLLEEN MARY O'TOOLE, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

11

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶38} Contrary to the majority's position, the language in Section 21.4 of the collective bargaining agreement is neither ambiguous nor technical so as to permit this court, or any other, to construe its meaning contrary to the intent of the parties as expressed in the agreement. Accordingly, I respectfully dissent.

{¶39} Section 21.4 provides as follows: "Teachers who are assigned classroom instruction duties in lieu of a planning period shall be compensated at a rate of 10% of the teacher's annual salary."

{¶40} The only permissible interpretation of Section 21.4 is "that which the plain language of the contract provides." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 544 N.E.2d 920 (1989), syllabus.

{¶41} In order to be entitled to the stipend, a teacher must be assigned classroom duties "in lieu of," i.e., "[i]nstead of, or in place of," a planning period. Black's Law Dictionary 803 (8th Ed.2004).

{¶42} This language is not, as the majority represents, reasonably susceptible to the meaning that a teacher is entitled to the stipend if he or she "has classroom instructional duties during all instructional periods" of the day. *Supra* at ¶ 23. Section 21.4 simply does not mention instructional periods at all. Moreover, that teachers should receive additional compensation for having to teach during instructional periods is not a reasonable interpretation of Section 21.4 which, on its face, states that

12

entitlement to the stipend depends on the teacher having instructional duties in place of a planning period.

{¶43} The majority expends some effort arguing that the caption of Section 21.4, "Eighth Period Stipend," is of uncertain technical meaning and, therefore, requires this court to consider the parties' history of collective bargaining and past practice to give it definite meaning. I would suggest that the meaning of "Eighth Period Stipend" is fixed by the clear and unambiguous language of Section 21.4 itself.

{¶44} By imposing such an unwarranted interpretation on the clear and unambiguous language of Section 21.4, the majority violates the basic tenets of contract law and interpretation. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11; *Blosser v. Enderlin*, 113 Ohio St. 121, 148 N.E. 393 (1925), paragraph two of the syllabus ("evidence can not be introduced to show an agreement between the parties materially different from that expressed by clear and unambiguous language of the instrument"). "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Galatis* at ¶ 11.

{¶45} The majority's detailed consideration of impermissible parol evidence demonstrates there is no real ambiguity about Section 21.4. Rather, the dispute over entitlement to the stipend only arose after the underlying factual situation had changed.

{¶46} In 2000, when the practice of paying a stipend began, there was no significant period of time outside of the regularly scheduled instructional periods to serve as a planning period. Teachers arrived at 7:45 a.m. and instruction began at 8:05

13

a.m. Planning periods necessarily occurred during the instructional periods. Beginning with the 2011-2012 academic year, the Auburn School Board manipulated the schedule so that all teachers were provided a period of time from 7:30 a.m. to 8:15 a.m. for planning purposes. Since this period of time did not exist prior to 2011, the parties' past practice provides no guidance as to whether it properly constitutes a planning period.

{¶47} Section 21.4 was ratified in October 2009, and as long as planning periods were scheduled during instructional periods there was no problem understanding its plain meaning. It was only when the teachers' day schedule was reorganized in 2011 that the language of Section 21.4 no longer served the purposes that the Career & Technical Association intended it to serve. That dissatisfaction, however, does not permit the Association to now claim, and this court to hold, that the language agreed to by the parties is ambiguous or no longer properly reflects the intent of the parties. The only appropriate relief for the Association is to renegotiate the terms of the collective bargaining agreement.

{¶48} Accordingly, I respectfully dissent.