[Cite as *Career & Technical Assn. v. Auburn Vocational School Dist. Bd. of Edn.*, 2022-Ohio-2737.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| CAREER & TECHNICAL ASSOCIATION, | **CASE NO. 2021-L-113** |
| Plaintiff-Appellee, | Civil Appeal from the Court of Common Pleas |
| - v - | |
| AUBURN VOCATIONAL SCHOOL DISTRICT BOARD OF EDUCATION, | Trial Court No. 2011 CV 003318 |
| Defendant-Appellant. | |

**O P I N I O N**

Decided: August 8, 2022
Judgment:  Affirmed

*Ira J. Mirkin, Jeffrey J. Geisinger* and *Charles W. Oldfield,* Green, Haines, Sgambati Co., LPA, 100 Federal Plaza East, Suite 800, P.O. Box 849, Youngstown, OH 44501 (For Plaintiff-Appellee).

*Matthew John Markling, Kellie D. Zaccardelli* and *Kendra L. Barabasch,* McGown & Markling Co., LPA, 1894 North Cleveland-Massillon Road, Akron, OH 44333 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Auburn Vocational School District Board of Education ("the Board"), appeals from various judgments of the Lake County Court of Common Pleas, the final of which is an entry adopting the magistrate's decision, after a bench trial, in which appellee, Career & Technical Association ("CATA"), was awarded judgment relating to back pay to which the court determined certain teachers were entitled under

the governing collective bargaining agreement ("CBA") for working extra class periods. We affirm the judgments of the trial court.

{¶2} **INTRODUCTION**

{¶3} The Board is the governing authority of the Auburn Vocational District and Auburn Career Center. The Board is responsible for the operation, management, and administration of the public schools within the district, which consist of a vocational high school and an adult workforce program. CATA is the bargaining representative for the Board's teaching staff.

{¶4} The substantive aspects of this appeal center upon the interpretation of a previously-determined, ambiguous provision in the operative CBA. That provision, referred to as the "Eighth Period Stipend" was formally adopted by both parties into the 2009 CBA under Section 21.4. It provides:

{¶5} "Teachers who are assigned classroom instruction duties in lieu of a planning period shall be compensated at a rate of 10% of the teacher's annual salary."

{¶6} At trial, evidence was received on whether the following provision mandated compensation for teachers who worked eight periods without a planning period during the hours encompassing the students' classroom instruction day; or, alternatively, whether no compensation was required if a teacher had a planning period during the hours which encompassed his or her workday, regardless of whether he or she worked eight periods during the students' instruction day.

{¶7} **FACTS AND PROCEDURAL HISTORY**

{¶8} The district's superintendent from 1998 through mid-2009 was G. Thomas Schultz. According to Mr. Schultz, prior to 2011, the school day at Auburn consisted of

2

eight instructional 45-minute periods and a lunch period.  Some teachers had eight instructional periods, while others had less.  Teachers with less than eight instructional periods had one non-instructional planning period at some time during the student class day.  In contrast, those teachers with eight instructional periods were required to engage in these planning activities on their own time.

{¶9}   During that time, the Board would offer compensation for the additional classroom instruction; to this end, Mr. Schultz and the Board would enter supplemental contracts with the teachers who instructed eight periods.  Although the supplemental contracts did not formally refer to the compensation as an "Eighth Period Stipend," they did refer to the "8th period."  And the practice of providing such compensation became commonly known as the "Eighth Period Stipend."  The stipend was equivalent to 10% of the teacher's annual salary.

{¶10}  Between the 2000 and 2008 school years, the bargaining agent for the teachers was the Vocational Education Teachers Association ("VETA").  During this time, no CBA between VETA and the Board included any reference to the Eighth Period Stipend.  Still, neither VETA nor Auburn objected to the practice of awarding a stipend.

{¶11}  Approximately 21 teachers received the stipend in the 2010-2011 school year; 17 in the 2009-2010 school year; 14 in the 2008-2009 school year; 10 in the 2007-2008 school year; and seven in the 2006-2007 school year.  No formal records were presented for prior years.

{¶12}  The teacher workday is set by the CBA and is not subject to change during the term of the agreement.  It is the time a teacher is required to be at the school.  The 2009 CBA, however, did not limit the superintendent's and/or the Board's ability to set

3

when the student day began or ended, so long as the number of hours of instruction set by statute were met. The hours comprising the school day varied.

{¶13} Prior to 2011, the teacher workday generally began at 7:45 a.m. and ended at 3:15 p.m. The student instructional day during this time was generally from 8:00 a.m. and ended at 2:30 p.m. After 2:45 p.m., various meetings between teachers and the superintendent as well as other administrators were often scheduled. Planning periods during these abbreviated blocks of time was not possible. And, as a result, planning periods did not exist during the student day.

{¶14} In 2009 CATA became the exclusive bargaining agent for the teachers. Throughout negotiations between CATA and the Board, various drafts of a new CBA were circulated. In a June 2009 draft, under a provision designated "Supplemental Duties," there was a blank, undefined designation for an "Eighth Period Stipend." Ultimately, the CBA was finalized and, under Section 21.4, the parties formally implement the "Eighth Period Stipend."

{¶15} The 2010-2011 school year was the first full year under the 2009 CBA. The workday for teachers was 7:30 a.m. to 3:00 p.m. and the student instructional day was from 8:00 a.m. to approximately 2:30 p.m. Prior to 2011-2012 school year, Margaret Lynch, the successor superintendent, discovered that the number of instructional hours taught at Auburn exceeded the state minimum requirements. She also learned that multiple school districts that bussed students to Auburn could not drop off their students by 8:00 a.m. Moreover, a July 2011 audit performed by the State of Ohio's Auditor's office advised that providing a 40-minute planning period to teachers during the teacher

4

workday could greatly reduce the sums being paid under the Eighth Period Stipend provision of the CBA.

{¶16} By shortening the classroom-instruction day and starting later, Ms. Lynch realized Auburn could provide a uniform planning period at the beginning of the workday, allow all districts to have bussed students to school on time, and still meet state teaching standards. In the summer prior to the start of the 2011-2012 school year, Ms. Lynch advised CATA on several occasions that she wished to provide all teachers with a planning period consisting of at least 40 minutes. No supplemental contracts were disseminated or offered to the teaching staff.

{¶17} In light of the foregoing, the student instructional day was changed; it would start at 8:18 a.m. and conclude at 2:28 p.m. Each teacher would now have a 45-minute planning block at the start of their workday, from 7:30 a.m. to 8:15 a.m. Ms. Lynch and Auburn's principal made concerted efforts to avoid meeting with teachers during this pre-instructional planning period. The implementation of the mandatory planning period had the practical effect of negating the Eighth Period Stipend. In the Board's view, the stipend was no longer required because it was designed to compensate teachers who had no planning period during their workday. CATA disagreed. It maintained the stipend was designed to compensate teachers who work eight full periods during the classroom-instructional day, irrespective of whether a teacher had a planning period during his or her workday. In light of this interpretational difference, CATA filed a grievance.

{¶18} After considering the parties' positions, the Board denied the grievance. CATA subsequently filed the underlying complaint in the trial court alleging a breach of Section 21.4 of the CBA. CATA alleged that, since the beginning of the 2011-2012 school

5

year, the Board breached Section 21.4 by refusing to pay the stipend to its teachers who were assigned eight periods of classroom instruction. After discovery, dispositive motions for summary judgment were filed by both parties. The trial court denied CATA's motion and granted summary judgment to the Board. CATA appealed and, in *Career & Technical Assn. v. Auburn Vocational School Dist. Bd. of Edn.*, 11th Dist. Lake No. 2013-L-010, 2014-Ohio-1572, this court found Section 21.4 was susceptible to more than one reasonable interpretation and was thus ambiguous. *Career & Technical Assn., supra*, at ¶36. This court also found the title, "Eighth Period Stipend," ambiguous because it is a technical term which is neither defined at law nor within the 2009 CBA. *Id.* Concluding there were genuine issues of material fact for trial, this court reversed and remanded the matter for further proceedings.

{¶19} Prior to trial, the parties had entered various joint stipulations. Significantly, the stipulations specifically set forth the damages each teacher would be entitled to if CATA prevailed. The matter was tried to the magistrate in 2016. After taking evidence, the magistrate issued his decision on September 30, 2019. In resolving the ambiguities identified by this court, the magistrate recommended, in light of testimony and evidence of past practices, that the trial court adopt CATA's interpretation of the CBA and thereby award damages. The Board filed objections to the magistrate's decision that CATA duly opposed.

{¶20} While the objections were pending, the Board moved to withdraw its joint stipulations; it further sought to dismiss the matter for lack of subject-matter jurisdiction. The trial court denied both motions. On October 16, 2020, the trial court adopted the magistrate's substantive recommendations. Later, after considering several additional

6

issues which were not disposed of in the previous entry, the trial court, on October 14, 2021, awarded damages to CATA, based upon the jointly stipulated amounts, in the sum of $1,486,045.78. The Board now appeals assigning seven errors.

**{¶21} SUBJECT- MATTER JURISDICTION**

**{¶22}** For its first assignment of error, the Board asserts:

**{¶23}** "The trial court erred in denying the Board's motion to dismiss for lack of subject matter jurisdiction because the State Employment Relations Board has exclusive jurisdiction over this matter."

**{¶24}** The Board argues that the claims raised by CATA in its complaint arise from and are dependent upon collective bargaining rights under R.C. Chapter 4117. As such, it maintains the claims fall under the exclusive jurisdiction of the State Employment Relations Board ("SERB").

**{¶25}** Subject-matter jurisdiction is the power conferred upon a court, either by constitutional provision or by statute, to decide a particular matter or issue on its merits. *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 75 (1998). SERB is a state agency created by R.C. Chapter 4117. R.C. 4117.02(A); *see also State ex rel. Brecksville Edn. Assn., OEA/NEA v. State Emp. Relations Bd.*, 74 Ohio St.3d 665, 666 (1996). As a state agency and a creation of statute, SERB is limited to the authority and jurisdiction conferred on it by statute. *State ex rel. Ohio Civ. Serv. Emp. Assn. v. State*, 146 Ohio St.3d 315, 2016-Ohio-478, ¶51. "When the General Assembly intends to vest an administrative agency with exclusive jurisdiction, it does so by appropriate statutory language." *State ex rel. OCSEA, supra*, at ¶52 citing *State ex rel. Banc One Corp. v. Walker*, 86 Ohio St.3d 169, 171-172 (1999).

7

Case No. 2021-L-113

{¶26} "Exclusive jurisdiction to resolve unfair labor practice charges is vested in SERB in two general areas: (1) where one of the parties filed charges with SERB alleging an unfair labor practice under R.C. 4117.11 and (2) where a complaint brought before the common pleas court alleges conduct that constitutes an unfair labor practice specifically enumerated in R.C. 4117.11." *State ex rel. Ohio Dept. of Mental Health v. Nadel*, 98 Ohio St.3d 405, 2003-Ohio-1632, ¶23. "Nowhere in R.C. Chapter 4117 does the General Assembly assign SERB exclusive jurisdiction over all issues touching on that chapter's provisions. Instead, the General Assembly targeted specific issues for SERB to address in the first instance." *State ex rel. OCSEA, supra.* Indeed, the Supreme Court has "expressly acknowledged * * * that a plaintiff may raise in the common pleas courts rights that exist independently of R.C. Chapter 4117, 'even though they may touch on the collective bargaining relationships.'" *Id.* at ¶54 quoting *Franklin Co. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167, 172 (1991). Accordingly, "if a party asserts rights that are independent of R.C. Chapter 4117, the party's complaint may properly be heard in common pleas court." *Id.* at paragraph two of the syllabus. If, however, the party advances claims that "arise from or depend on the collective bargaining rights created by R.C. Chapter 4117," SERB has exclusive, original jurisdiction. *Id.* at paragraph two of the syllabus.

{¶27} In this matter, the Board attempted to eliminate the Eighth Period Stipend by changing the start of student classes from 8:00 a.m. to 8:20 a.m. And, because teachers started their workday at 7:30 a.m., the Board subsequently required all teachers to attend a planning period between 7:30 a.m. to 8:15 a.m. The Board, in enacting the above changes, concluded the "Eighth Period Stipend" did not require compensation for

8

an eighth period worked. Rather, according to the Board, the implementation of a mandatory planning period removed the necessity of the stipend because all teachers, whether they worked eight periods or not, had the benefit of a planning period during their workday. Essentially, the Board's construction of Section 21.4 was premised upon its position that, to the extent a planning period occurred during the teacher's workday (not the classroom instruction day), the stipend was unnecessary.

{¶28} The Board initially argues that the substance of the complaint asserts specific unfair labor practices under R.C. 4117.11(A) and thus SERB possesses exclusive jurisdiction to resolve CATA's allegations. The Board first claims the substance of the allegations relate to an unfair labor practice under R.C. 4117.11(A)(1). That statute provides that it is an unfair labor practice for a public employer to "[i]nterfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117 of the Revised Code or an employee organization in the selection of its representative for the purposes of collective bargaining or the adjustment of grievances[.]" *Id.* The Board contends the act of requiring all teachers to engage in a planning period before the classroom instruction day commences interfered with employees' rights under R.C. Chapter 4117. We do not agree.

{¶29} First of all, we must point out that the "right" in question is the Eighth Period Stipend. An Eighth Period Stipend is not a right guaranteed under R.C. Chapter 4117. *See Bd. of Trumbull Co. Cmmrs. v. Gatti*, 11th Dist. Trumbull No. 2017-T-0027, 2017-Ohio-8533, ¶15. (Appellee's sought remuneration for appellant's failure to pay his proportional share of hospitalization premium; although appellant's duty to pay and appellee's right to reimbursement arose out of the collective bargaining agreement, this

9

Case No. 2021-L-113

court held SERB did not have exclusive jurisdiction because "there is no provision under R.C. Chapter 4117 that creates such rights or obligations.") Even though the Eighth Period Stipend arises out of the CBA, like the duty and right in *Gatti*, there is nothing in R.C. 4117.11(A)(1) that creates this interplay of rights and obligations between teachers and the Board.

{¶30} That said, CATA's allegations in its complaint involve a dispute over the interpretation of Section 21.4. As noted above, that section provides: "Teachers who are assigned classroom instruction duties in lieu of a planning period shall be compensated at a rate of 10% of the teacher's annual salary." In reversing and remanding the trial court's original entry of summary judgment in the Board's favor, this court noted that the provision at issue is reasonably susceptible to more than one interpretation. To wit, this court observed:

{¶31} The phrase, "teachers who are assigned to classroom instructional duties in lieu of a planning period," can be taken to mean that a teacher is entitled to the stipend if the teacher has classroom instructional duties during all instructional periods without a planning period at some time during the eight instructional periods (as [CATA] argues). Under this interpretation, the planning period created by the board between 7:30 a.m. and 8:15 a.m. for the 2011–2012 school year does not qualify as a planning period because teachers are not assigned instructional duties in that time slot. Alternatively, this section can be taken to mean that, as long as teachers are given a planning period at any time of the day, even prior to the start of class, they are not entitled to the stipend (as the [Board] argues). For this reason alone, Section 21.4 is ambiguous.

{¶32} Further, the term, "eighth period stipend," is not defined in the CBA or Ohio law in terms of when the planning period must occur. Thus, it is unclear from the CBA whether the planning period must take place during one of the instructional periods or whether it can occur when the students are not at school. For this additional reason, this section is ambiguous. *Career & Technical Assn.*, *supra*, at ¶23-24.

10

Case No. 2021-L-113

{¶33} In light of the ambiguity identified by this court, the only dispute set forth in the complaint relates to the meaning of Section 21.4. This issue, or the issues attendant to resolving the interpretational question does not "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117." R.C. 4117.11(A)(1). Thus, the issue does not involve an unfair labor practice as set forth under R.C. 4117.11(A)(1).

{¶34} Next, the Board asserts the allegations relate to an unfair labor practice under R.C. 4117.11(A)(5), which provides that it is an unfair labor practice to "[r]efuse to bargain collectively with the representative of his employees recognized as the exclusive representative or certified pursuant to Chapter 4117. of the Revised Code[.]" *Id.* The Board asserts its alleged conduct can be construed as or is equivalent to a refusal to collectively bargain with CATA or the teachers' representative. We again disagree.

{¶35} While the Board ostensibly implemented the planning period without "bargaining" with CATA or any representative, we cannot construe this act as a refusal to collectively bargain. Indeed, the implementation merely required the teachers to engage in a planning period before the class day, regardless of whether they taught eight (or less) periods during their workday. We therefore discern no unfair labor practice alleged under subsection (A)(5).

{¶36} Given the foregoing, we hold that CATA's complaint did not allege any conduct that constitutes an unfair labor practice specifically enumerated in R.C. 4117.11. In this respect, the matter is not within the exclusive jurisdiction of SERB. *See State ex rel. Ohio Dept. of Mental Health v. Nadel,* 98 Ohio St.3d 405, 2003-Ohio-1632, ¶23, (pointing out exclusive jurisdiction is vested in SERB in two general areas: (1) where

11

charges alleging an unfair labor practice under R.C. 4117.11 is filed with SERB and (2) where a complaint brought before the court of common pleas alleges conduct constituting an unfair labor practice under the statute.)

{¶37} Notwithstanding the foregoing, the Board asserts CATA's claims arise from or depend upon the collective bargaining rights under R.C. Chapter 4117 because they implicate a refusal to pay the stipend. According to the Board, this point necessarily triggers R.C. 4117.08(A), which is captioned "Subjects of bargaining; exclusions," and provides: "All matters pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement are subject to collective bargaining between the public employer and the exclusive representative, except as otherwise specified in this section and division (E) of section 4117.03 of the Revised Code."

{¶38} According to the Board, even though the statute is not directly connected with the specifically enumerated unfair labor practices under R.C. 4117.11, the Board's conduct, viewed in relation to this provision, arguably implicates such a practice. Specifically, the Board contends its act of implementing the planning period functioned to "modify" or "delete" Section 21.4, which is a matter "pertaining to wages, hours, or terms and other conditions of employment." Thus, it claims, the underlying matter was within the exclusive jurisdiction of SERB. We do not agree.

{¶39} Initially, there is no dispute that Section 21.4 was a "subject" of the relevant collective bargaining agreement. And, although the implementation of the planning period affected the wages of the Eighth Period Stipend participants, this does not imply the participants' alleged "right" to the stipend, which flowed from the provision, places the

12

Case No. 2021-L-113

dispute within the exclusive jurisdiction of SERB.  To the contrary, as discussed above, the principal basis for CATA filing the complaint and the matter proceeding to trial is a difference in each parties' interpretation of Section 21.4.  The section was included in the collective bargaining agreement (consistent with R.C. 4117.08(A)) and it was neither modified nor deleted (also consistent with R.C. 4117.08(A)).  Indeed, Section 21.4 remained intact within the collective bargaining agreement at all relevant times.  The issue for trial arose, therefore, not because the provision was excluded from the agreement or otherwise modified, but because the provision was assigned competing, reasonable interpretations by each party.  Resolution of this issue does not implicate an unfair labor practice under R.C. Chapter 4117 and thus R.C. 4117.08(A) cannot be viewed as a vehicle for conferring exclusive jurisdiction upon SERB.

{¶40}  The preceding analysis is intertwined with the Board's next assertion, i.e., that its actions affected teachers' rights under R.C. 4117.03.  That section is entitled "Rights of public employees; restrictions on public employers."  The Board invokes R.C. 4117.03(A)(4) in support of its position, which states that public employees have the right to: "[b]argain collectively with their public employers to determine wages, hours, terms and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement, and enter into collective bargaining agreements[.]" *Id*. The Board contends that its unilateral modification or termination of the stipend fundamentally violated the teachers' right to collectively bargain with their employer relating to "wages, hours, terms and other conditions of employment." We do not agree.

13

Case No. 2021-L-113

{¶41} R.C. 4117.03(A)(4) merely affords employees the right to collectively bargain with employers regarding wages, hours, etc. Section 21.4 relates to wages and was included in the collective bargaining agreement. Moreover, as noted above, the Board's actions did not modify or terminate Section 21.4; the provision remained in the collective bargaining agreement unaltered. The Board, by implementing the pre-classroom instruction day planning period, did not change the language of the section nor was it an attempt to remove or "terminate" the section from the collective bargaining agreement. The Board's action may have had the practical effect of abrogating the impact Section 21.4 had on teachers *prior to* the implementation of the pre-class instruction planning period. As this court previously concluded, the Board's action was supported by a reasonable interpretation of the provision. At issue is the validity of the Board's interpretation. This interpretation did not function to abrogate the teachers' right to collectively bargain with the Board on the issue of their wages. It simply limited or negated the previous effect of the Eighth Period Stipend.

{¶42} We consequently conclude that even though R.C. 4117.03(A)(4) grants employees the right to collectively bargain on matters relating to, inter alia, wages, this right was not compromised by the Board's actions. Rather, the issue at the heart of CATA's complaint is whether the Board's interpretation of Section 21.4 was contrary to CATA's interpretation of the section. We therefore hold that R.C. 4117.03(A)(4) does not confer exclusive jurisdiction on SERB under the circumstances.

{¶43} With the foregoing in mind, R.C. 4117.09(B)(1) expressly allows for suits alleging violations of collective bargaining agreements to be brought in the courts of common pleas. *Young v. Ohio State University Hospitals*, 10th Dist. Franklin No. 16AP-

14

Case No. 2021-L-113

527, 2017-Ohio-2673, ¶13, citing *Moore v. Youngstown State Univ.*, 63 Ohio App.3d 238, 242 (10th Dist.1989). Under R.C. 4117.09(B)(1), collective bargaining agreements subject to R.C. Chapter 4117 must provide "a grievance procedure which *may* culminate with final and binding arbitration of unresolved grievances." (Emphasis added). This section further provides that "[a] party to the agreement may bring suits for violation of agreements or the enforcement of an award by an arbitrator in the court of common pleas of any county wherein a party resides or transacts business."

{¶44} In light of the foregoing, R.C. 4117.09(B)(1) "'requires that any collective bargaining agreement contain a two-step procedure - a grievance procedure with arbitration first, and ultimately the right [of a party] to file in common pleas court.'" (Citation omitted.) *Young*, *supra*, quoting *State ex rel. Wilkinson v. Reed*, 99 Ohio St.3d 106, 2003-Ohio-2506, ¶19. Accordingly,"[i]t is clear [based on the language of R.C. 4117.09(B)(1) ] that the intent of the General Assembly in establishing this limited jurisdiction within the common pleas court is limited to those instances where it is claimed that there has been a violation of a collective bargaining agreement or for the enforcement of an arbitrator's award." *Franklin Cty. Sheriff's Dept. v. Fraternal Order of Police, Capital City Lodge No. 9*, 64 Ohio App.3d 684, 689 (10th Dist.1991).

{¶45} Here, after the Board's action of implementing the planning period, a grievance was filed. Although the grievance procedure did not provide for, and therefore did not culminate in, a final binding arbitration, R.C. 4117.09(B)(1) does not require this eventuality for a matter to proceed to the court of common pleas. The underlying complaint was filed alleging, inter alia, a breach of the collective bargaining agreement. As just discussed, this allegation, in light of the surrounding circumstances, does not

15

implicate an unfair labor practice as defined by R.C. 4117.11(A) or otherwise relate to an arguable unfair labor practice governed by R.C. Chapter 4117. We accordingly conclude that the underlying matter involves issues independent of the rights created by R.C. Chapter 4117, and thus, the court of common pleas properly exercised jurisdiction over the case pursuant to R.C. 4117.09(B)(1)

**{¶46}** The Board's first assignment of error lacks merit.

**{¶47}** <u>**ISSUE REGARDING WITHDRAWAL OF JOINT STIPULATIONS**</u>

**{¶48}** For ease of discussion, we shall next address the Board's sixth assignment of error. It provides:

**{¶49}** "The trial court erred in denying the Board's motion to withdraw any and all joint stipulations as to damages because the Board never stipulated to damages."

**{¶50}** Under this assignment of error, the Board maintains the trial court abused its discretion in denying its motion to withdraw the joint stipulation of damages into which it entered with CATA relating to the eighth period stipends from the 2011-2012 school year through the 2017-2018 school year. The Board blankly asserts it never stipulated to damages. We disagree.

**{¶51}** "A party who has agreed to a stipulation cannot unilaterally retract or withdraw from it." *Julian v. Creekside Health Ctr.*, 7th Dist. Mahoning No. 03MA21, 2004-Ohio-3197, ¶54. "Once the parties have entered into and filed stipulations, one party may not, without consent to the other, be permitted to withdraw from the stipulations without leave of court upon good cause show." *Albertson v. Ryder*, 11th Dist. Lake No. 91-L-103, 1992 WL 192454 (June 30, 1992), *5. A stipulation of fact removes the issue from the litigation and renders proof unnecessary. *McLeod v. McLeod*, 11th Dist. Ashtabula No.

16

2012-A-0030, 2013-Ohio-4546, ¶32. When parties mutually agree to facts or evidence in the case and enter into stipulations, such stipulations are regarded as "'expressing the result of proof made by both parties, and so belonging to both parties, that neither party could withdraw the same.'" *Garrett v. Hanshue*, 53 Ohio St. 482, 495 (1895), quoting *Ish v. Crane*, 13 Ohio St. 574, 580 (1862). Therefore, a stipulation functions the same as the factual determination rendered, in this case, by a court, upon conflicting evidence. *State v. F.O.E. Aerie 2295*, 38 Ohio St.3d. 53, 54 (1988).

**{¶52}** With this in mind, the record reflects that each party jointly stipulated that the collective bargaining agreement in which the eighth period stipend appears, which was effective through 2012, remained in effect during the pendency of the proceedings. The joint stipulation specifically provided: "C.A.T.A. and the Defendant Board are parties to a collective bargaining agreement effective from July 1, 2009 to Jun 30, 2012. Joint Exhibit 1 is a true and accurate copy of the collective bargaining agreement between Plaintiff and Defendant effective from July 1, 2009 to June 30, 2012. The parties are currently in negotiations over a successor agreement, and therefore the terms and conditions of the collective bargaining agreement (Joint Exhibit 1) have remained in effect since June 30, 2012." In light of this joint stipulation, if CATA prevailed on the merits, then the Board would have an ongoing breach of the Eighth Period Stipend provision with damages continuing to accrue.

**{¶53}** Prior to trial, the parties entered into three separate joint stipulations. Each of the stipulations followed the same pattern and, in effect, stated, if CATA prevailed on the merits of the suit, the affected teachers would be entitled to specific sums certain due to the Board's decision not to pay the eighth period stipend. After trial concluded in 2016,

17

some three years passed before the magistrate issue a decision.  In the meantime, the parties entered into two additional joint stipulations each of which followed the same pattern as the previous three. Each of the newly entered joint stipulations calculated damages for the successive school years that accrued while the underlying matter was pending.

{¶54}  After trial to the magistrate, which culminated in a September 2019 decision recommending that damages be awarded to CATA from the 2011-2012 school year through the 2017-2018 school year, the Board filed a "motion to withdraw joint stipulations of damages."  That motion was filed nine days after the magistrate issued his decision.

{¶55}  With these points in mind, we note that, after the trial court denied the Board's motion to withdraw its joint stipulations on October 16, 2020, the Board, on March March 22, 2021, entered into its sixth and final joint stipulation of damages.  In that joint stipulation, the parties agreed that damages calculations would end with the 2020-2021 school year.  Because the Board entered this final joint stipulation after its motion to withdraw was denied, it stands to reasons that the Board conceded the issue of damages.

{¶56}  That said, there is nothing to indicate the Board somehow entered into the joint stipulations without knowledge of their import.  Each of the ultimately six joint stipulations specify "[t]o the extent this Honorable Court enters final judgment awarding CATA's current and former members damages for each year from the 2011-2012 school year" through each successive year the matter is pending "the Parties agree that Exhibit A[,referencing each employee over each of the school years relevant to the suit,] contains the total amount of damages that the Board owes to each member for those years * * *."  The Board, a sophisticated party, voluntarily and repeatedly entered into the joint

18

stipulation for damages, with an additional joint stipulation occurring after its motion to withdraw was denied. To permit withdrawal of the joint stipulations would require additional evidence of damages, a burden that was relieved from CATA via the various jointly stipulated damages calculations. This is not only unreasonable, but unjust and senseless. The trial court did not abuse its discretion in overruling the Board's motion.

{¶57} The Board's sixth assignment of error is without merit.

{¶58} **WAS AMENDMENT TO COMPLAINT REQUIRED?**

{¶59} For its second assignment of error, the Board asserts:

{¶60} "The trial court erred in awarding damages to the Association for the Board's alleged breach of the collective bargaining agreement from the 2012-2013 school year through the 2020-2021 school year because the Association never amended the original compliant to invoke the relation back provisions of Civ.R. 15."

{¶61} Under this assigned error, the Board asserts CATA was required to amend its original complaint to relate back claims for damages beyond the 2011-2012 school year. By failing to amend the complaint to include damages after the 2011-2012 school year, the trial court erred by permitting CATA's claims to relate back to the original date of the complaint. In the Board's view, this is problematic because the parties presented evidence on the meaning of Section 21.4, but the CBA in which that section was included expired the following year. By permitting CATA to claim damages for back pay beyond the expiration of the CBA without an effective amendment of the complaint, the Board asserts the trial court essentially endorsed the idea that a party can claim damages that have not yet occurred. We do not agree.

19

Case No. 2021-L-113

**{¶62}** Although the Board argues at great length that the original complaint was insufficient to envelop continuing damages from the time of the complaint (2011-2012 school year) up through the 2020-2021 school year, CATA's complaint made the following demand: "That the Court award C.A.T.A.'s bargaining unit members all wages and benefits lost by reason of Defendant Board's breach of its collective bargaining agreement with C.A.T.A., in an amount to be determined at trial." The language "all wages * * * lost by reason of Defendant Board's breach" is sufficient to place the Board on notice that the damages sought would transcend merely those incurred merely for the 2011-2012 school year. This is particularly true where, as discussed above, the Board entered into a total of six temporally progressive joint stipulations as to damages the participating teachers suffered *if* CATA prevailed on the merits. The first joint stipulation was entered in January 2013 and the final entered in March 2021.

**{¶63}** While each joint stipulation covers additional school years for which each party agreed to specific damages, the final joint stipulation covers the entirety of the damages timeline contemplated by *both parties*. That joint stipulation provides:

**{¶64}** To the extent this Honorable Court enters final judgment awarding CATA's current and former members damages for each year from the **2011-2012 school year** to the **2020-2021 school year,** the Parties agree that **Exhibit A** contains the total amount of damages that the Board owes to each member for those years and the total amounts that are to be remitted to the State Teachers Retirement System of Ohio ("STRS") on behalf of each member for those years with the exception that any damages owed by the Board shall continue to accrue through the date of final judgment and accordingly, payment of the 2020-2021 school year amounts shall be pro-rated through the date of final judgment including amounts due to STRS. (Emphasis sic.)

**{¶65}** Exhibit A proceeds to list the damage amounts to which all specific teachers would be entitled if CATA prevailed. And, as noted above, the joint stipulation covers

20

school years 2011-2012 through 2020-2021. These stipulations are clear and unequivocal. As such, the Board's statement that the trial court erred in allowing the damages calculation to go beyond the 2011-2012 year is without merit.

{¶66} Civ.R. 15(B) allows amendments of the pleadings to conform them to the evidence and provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." The purpose of the rule is to ensure that cases are "decided on the issues actually litigated at trial," and the rule therefore applies only when the un-pleaded issue was "tried by either the 'express or implied consent of the parties.'" *State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d 41, 44 (1983), quoting Civ.R. 15(B). Even if the complaint were insufficiently pleaded (an issue we need not reach), the Board clearly and expressly consented, by evidence of the joint stipulations, the final of which was entered in March 2021, some 18 months after the magistrate rendered his decision in CATA's favor, to allow damages through the 2020-2021 school year by consent. The trial court, therefore, did not err in awarding damages.

{¶67} The Board's second assignment of error lacks merit.

{¶68} **ISSUES SURROUNDING CIV.R. 53**

{¶69} The Board's third, fourth, and fifth assignments of error shall be addressed together. They state:

{¶70} "[3.] The trial court erred in denying the Board's motion to set aside the magistrate's order that the Board pay damages because this matter was not properly referred to the magistrate pursuant to Civ.R. 53(D)(1)(a).

21

**{¶71}** "[4.] The trial court erred in denying the Board's motion to set aside the magistrate's order that the Board pay damages because the magistrate had no authority to order the Board to pay damages pursuant to Civ.R. 53(D)(2)(a)(i).

**{¶72}** "[5.] The trial court erred in adopting the magistrate's findings of fact and conclusions of law because the procedural requirements of Civ.R. 53 were not followed."

**{¶73}** The Board first asserts the trial court erred in denying its motion to set aside the September 30, 2019 magistrate's decision (the decision on the merits of the case) because it failed to comply with the mandates of Civ.R. 53(D)(2)(a)(ii). The Board contends the magistrate's "order" is identified as a magistrate's "decision," in violation of the rule; moreover, it contends that, even if it is a decision, the same purports to include a "hidden order" to pay damages found in the magistrate's recommendation to the trial court. We do not agree.

**{¶74}** Initially, the magistrate's decision is not an "order" governed by Civ.R. 53(D)(2)(a). A primary feature of a magistrate's order is it will take effect without judicial approval. Civ.R. 53(D)(2)(a)(i). Alternatively, "a magistrate's decision is not effective unless adopted by the court." Civ.R. 53(D)(4)(a). The trial on the merits eventuated in the September 30, 2019 *magistrate's decision* to which the Board filed objections pursuant to Civ.R. 53(D)(3)(b). The court considered the objections and, ultimately, adopted the great balance of the magistrate's decision. This judicial approval rendered the magistrate's decision on the approved findings and conclusions "effective." And it is from this judgment that a final order on the merits proceeded on appeal. Therefore, the September 2019 filing was a magistrate's decision and not an order.

22

{¶75} Further, there are no "hidden orders" to pay damages or otherwise in the September 2019 decision. The Board asserts the following magistrate's recommendation is an improper "order": "An order *should issue* requiring the Auburn board to pay those teachers named in Exhibit A in the amount or amounts due less required governmental withholding and other amounts required under the CBA (such as STRS contributions to name one)." (Emphasis added). The term "should" is not a mandate to the trial court. Indeed, given the nature of a magistrate's decision, any such directive would be contrary to rule. Instead, it is merely a proposal to the trial court from the magistrate in light of the latter's view of the evidence received, facts found, and surrounding conclusions rendered.

{¶76} Next, the Board argues the trial court erred in denying its motion to set aside the magistrate's order because the matter was never properly referred to the magistrate. This assertion lacks merit.

{¶77} "'Civ.R. 53 do[es] not specify the form of the reference order nor do[es] [it] require the court to journalize an individual order of reference for each issue submitted.'" *State ex rel. Nalls v. Russo*, 96 Ohio St.3d 410, 2002-Ohio-4907, ¶21, quoting *In re Morales,* 8th Dist. Cuyahoga No. 78271, 2001 WL 370637 (Apr. 12, 2001), *7. The record demonstrates that, on May 21, 1999, the trial court entered the following judgment: "Pursuant to the authority of the statute and of Civ.R. 53(C)(1), the within continuing order of reference shall enable Kenneth R. Roll [the magistrate in the underlying matter], a full time magistrate for the Lake County Common Pleas Court, to hear all cases, motions and issues encompassed by Civ.R. 53." Civ.R. 53(C)(1)(b) provides: "To assist courts of record and pursuant to reference under Civ. R. 53(D)(1), magistrates are authorized, subject to the terms of the relevant reference, to do any of the following: * * * Conduct the

23

trial of any case that will not be tried to a jury[.]"  Civ.R. 53(D)(1).  Civ.R. 53(D)(1)(a) provides:  "A court of record may, for one or more of the purposes described in Civ.R. 53(C)(1), refer a particular case or matter or a category of cases or matters to a magistrate by a specific or general order of reference or by rule."

{¶78}  Civ.R. 53 requires a trial court to refer a magistrate to preside over or address matters.  *See*, *generally*, Civ.R. 53(A), (C), and (D).  There is no specific formal requirement on the manner the court enters the reference.  *See Morales*, *supra*.  Here, the trial court filed a continuing, general order of reference that empowered the magistrate in this case to "hear all cases, motions and issues encompassed by Civ.R. 53."  We discern no procedural irregularities that compromised the magistrate's authority to hear the underlying matter.

{¶79}  Finally, the Board redundantly claims the trial court lacked authority to "order" the Board to pay damages under Civ.R. 53(D)(2)(a)(i).  As previously emphasized, the magistrate's decision is not an order and therefore, Civ.R. 53(D)(2) is inapplicable to this case.

{¶80}  The Board's third, fourth, and fifth assignments of error lack merit.

{¶81}  **<u>CHALLENGE TO THE MERITS</u>**

{¶82}  The Board's seventh assignment of error provides:

{¶83}  "The trial court erred in interpreting Section 21.4 to only apply to the student day versus the teacher workday."

{¶84}  Under its final assignment of error, appellant contends the trial court abused its discretion in adopting the magistrate's decision on the merits of CATA's breach of contract claim and awarding damages.

24

**{¶85}** We review a trial court's adoption of a magistrate's decision for an abuse of discretion. *Reamsnyder v. Marino*, 11th Dist. Trumbull No. 2018-T-0039, 2018-Ohio-5336, ¶7. "A court abuses its discretion when its judgment neither comports with reason, nor the record." *Warren Concrete & Supply, Inc. v. Strohmeyer Contracting, Inc.*, 11th Dist. Trumbull No. 2010-T-0004, 2010-Ohio-5395, ¶17.

**{¶86}** In reviewing a trial court's weighing of competing evidence and credibility determinations, we are guided by a presumption that the trial court's factual findings are correct. *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, ¶24. In considering whether a civil judgment is against the manifest weight of the evidence, an appellate court must apply the same standard as is used in reviewing a criminal judgment. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶17. Under that standard, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Tewarson v. Simon,* 141 Ohio App.3d 103, 115, (9th Dist.2001), quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). In *Eastley,* the Supreme Court of Ohio quoted *Tewarson* with favor. *Eastley*, *supra*, at ¶20.

**{¶87}** The Board first asserts that the trial court erred in interpreting Section 21.4 to only apply to the student day versus the teacher workday because the parties never reached a meeting of the minds with respect to the eighth period stipend's meaning. The Board's position is premised upon its conclusion that there was never a meeting of the minds when the section was included in the CBA.

25

Case No. 2021-L-113

**{¶88}** Clear and unambiguous contractual language is applied without consideration of extrinsic evidence, and such plain language is reviewed de novo. *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635, 638 (1992). If a contract is reasonably susceptible to more than one meaning, then it is ambiguous and extrinsic evidence of reasonableness or intent can be employed. *Id.* Words and phrases are given their common and ordinary meanings absent specific contractual definitions. *See, e.g., King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 212 (1988) (unless manifest absurdity would result or an alternative meaning is clearly demonstrated in the contract).

**{¶89}** An ambiguity in a collective bargaining agreement "cannot be resolved against any one particular party, which further makes the arbitrator's[, or in this case the fact finder's] interpretation of the contract provision worthy of deference by a reviewing court * * *." *Cleveland Police Patrolmen's Assn. v. Cleveland*, 99 Ohio App.3d 63, 66-67 (8th Dist.1994). *See also Dayton v. Fraternal Order of Police*, 76 Ohio App.3d 591, 598 (2d Dist.1991) This point is likely premised upon the generally equal and sophisticated bargaining positions each party possesses during the negotiating process. Hence, "'[i]n determining the mutual intent of the parties concerning any ambiguity the arbitrator [or, in this case, the fact finder] may look to the entire agreement, the history of the dealings between the parties, and industry practice.'" *Greater Dayton Regional Transit Auth. v. Amalgamated Transit Union AFL-CIO Local 1385*, 2d Dist. Montgomery No. 28155, 2019-Ohio-392, ¶48, quoting *Dayton, supra.*

**{¶90}** In reversing the trial court's earlier award of summary judgment to the Board, this court concluded there was an ambiguity in the language of Section 21.4. Hence, at trial, the magistrate was required to resolve the ambiguity at issue.

26

{¶91} Thomas Schultz was the Superintendent of Auburn Career Center from 1998 until April 1, 2009. As superintendent, Mr. Schultz was involved in establishing the Eighth Period Stipend. Mr. Schultz testified the Eighth Period Stipend was implemented because certain teachers were working eight instructional periods per day, while others were not. Because these teachers were working an extra period beyond others, he stated these teachers were entitled to more compensation.

{¶92} Rodney Kozar became a teacher at Auburn in 2004. Ultimately, he became the lead negotiator for CATA during negotiations over the CBA at issue. Mr. Kozar testified that he was aware of and had received the Eighth Period Stipend, which he characterized as "a ten percent stipend on your base pay that you would receive if you were in direct supervision of students during every available instructional period, essentially." Although Mr. Kozar was not employed with Auburn when the Eighth-Period-Stipend policy was initiated and it was not an aspect of the CBA when he joined the faculty, he asserted that he was aware of it and "[i]t was a common understanding." He additionally testified that Section 21.4 was intended to simply memorialize the parties' past practices of affording an Eighth Period Stipend for those teachers who taught eight periods during a school day.

{¶93} Moreover, Robert Hill, a longtime teacher for Auburn, became president of CATA in June 2011. He testified that if he was teaching eight periods per day, four in the morning and four in the afternoon, he received the Eighth Period Stipend. Furthermore, CATA introduced multiple supplemental contracts into which both parties entered to permit compensation for "one period of work," most of which refer to compensation for "8th period" or "8th period duties." These contracts predate the CBA at issue and go back

27

as early as the school year for 2000-2001. The supplemental contracts demonstrate that the parties understood the additional "8th period" would be compensated in addition to the teacher's base salary for an additional instruction period taught.

{¶94} Further, a review of the history of the CBA at issue demonstrates, during its drafting, a section was reserved for an "Eighth Period Stipend." Although it first appeared in a June 8, 2009 draft and was blank, this section, upon the CBA's finalization, culminated in Section 21.4 of the CBA. In light of the supplemental agreements entered into evidence, as well as the evidence of past practices to which Mr. Schultz, Mr. Kozar, and Mr. Hill testified, a reasonable inference can be drawn that the stipend at issue applied to teachers who taught eight full periods during the course of students' instructional class day. We therefore conclude that there was competent, credible evidence to support the magistrate's conclusion that the parties inserted Section 21.4 to memorialize the past practice of paying teachers an additional sum for teaching eight periods during a class day.

{¶95} The Board, however, contends the magistrate failed to construe the CBA as written; ignored Ohio law on planning periods set forth in O.A.C. 3301-35-05(A)(8); disregarded the authority of public employers to regulate work schedules under R.C. 4117.08(C); and disregarded Art. 6 of the CBA, which afforded the Board and superintendent the right to manage teachers' work schedules.

{¶96} The Board's arguments conflate its (as well as the superintendent's) ability to schedule a planning period outside the student instructional day with its duty to compensate teachers pursuant to Section 21.4. Even assuming the Board has the ability and authority to manage teachers' schedules and schedule planning periods at any time

28

during teachers' workday, this court, in reversing the trial court's original grant of summary judgment, held that "Section 21.4 is ambiguous and that a fact issue exists as to the parties' intent concerning the meaning of this provision." *Career & Technical Assn.*, *supra*, at ¶36.

{¶97} This court's remand order directed the trial court to take evidence from both parties regarding the meaning of the Eighth Period Stipend provision. While it was the Board's action of mandating a pre-class planning period which, in effect, prompted the dispute, the Board's actions of mandating the planning period or regulating work hours is irrelevant to the meaning of Section 21.4. In fact, the evidence received on the issue of the section's meaning and the trial court's interpretation of the section do not affect the Board's authority to mandate a planning period or regulate teachers' work hours.

{¶98} As discussed throughout this case, CATA advanced an interpretation of the Eighth Period Stipend that would entitle a teacher to the stipend if the teacher has classroom instructional duties during all eight instructional periods without a planning period at some point during the eight instructional periods. Under this interpretation, the mandated pre-instructional planning period (which the Board had authority to implement or at least CATA does not challenge any such authority) does not qualify as a planning period because no instructional duties are assigned to teachers during this time. Alternatively, the Board contends, at least in part, the section should be construed that, as long as teachers are afforded a planning period at any time during their workday, even prior to the classroom instructional periods, they are not entitled to the stipend. This court concluded that the section is reasonably susceptible to each of these interpretations and therefore a trial was required to resolve the ambiguity.

29

{¶99} To aid in resolving this factual issue, this court pointed out an additional ambiguity required attention; namely, the meaning of the phrase "Eighth Period Stipend." *Id.* at ¶25-26. In addressing this point, this court noted that parol evidence would be admissible to assist in defining the meaning of the phrase which would involve introducing evidence of the parties' past practices prior to the inclusion of the eighth period stipend in the CBA. *Id.* at ¶30-31.

{¶100} In concluding the ambiguity should be resolved in favor of CATA's interpretation, the trial court relied upon the past practices of the parties relating to the application of the Eighth Period Stipend. "'The law is clear that where the language of the contract is ambiguous, the court can look to such extrinsic evidence as the parties' conduct, the statements of its representatives, and past practice to aid in interpretation.'" *Westgate Ford Truck Sales v. Ford Motor Co.*, 8th Dist. Cuyahoga Nos. 101136 and 101073, 2014-Ohio-5429, ¶19, quoting *Klapp v. United Ins. Group Agency, Inc.,* 468 Mich. 459, 470 (2003); *see, also*, *Dayton, supra,* (in determining the mutual intent of the parties concerning ambiguities, various points may be considered, including the history of the dealings of the parties and industry practice.) Also, "'[a]n employer's past practice can become an implied term of a CBA.'" *Laborer's Int'l Union of N. America, Local Union No. 860 v. Cuyahoga Cty. Common Pleas Court, Juvenile Div.*, 8th Dist. Cuyahoga No. CA-19-108096, 2019-Ohio-3190, ¶26, quoting *Bonnell/Tredegar Industries, Inc. v. Natl. Labor Relations Bd.*, 46 F.3d 339, 344 (C.A.4, 1995).

{¶101} When interpreting technical terms, which this court concluded the phrase "eighth period stipend" was, "past practice is commonly used to explain technical or ambiguous terms in a contract." *Career & Technical Assn*, *supra*, ¶30. "To be binding

30

on parties to a collective bargaining agreement, a past practice must be (1) unequivocal, (2) clearly enunciated, and (3) followed for a reasonable period of time as a fixed and established practice accepted by both parties." *Assn. of Cleveland Fire Fighters, Local 93 of the Intl. Ass. of Fire Fighters v. Cleveland*, 99 Ohio St.3d 476, 2003-Ohio-4278, syllabus.

{¶102} CATA presented evidence from its teachers who received the Eighth Period Stipend prior to its memorialization in the CBA. Indeed, CATA submitted exhibits depicting copies of supplemental contracts (nearly all of which provided the designation "8th period" evincing an intent that the contracts were entered for the teachers' eighth period instruction) which demonstrated that the Board and the teachers had an established, formal practice of compensating teachers for "8th period" duties. The reasonable conclusion one draws from this evidence is that, prior to the eighth period stipend formally appearing in the CBA, the Board and teachers had an unequivocal, clearly enunciated past practice followed by each for multiple years.

{¶103} Moreover, CATA presented testimony of Auburn's former superintendent, Mr. Schultz, who testified:

> {¶104} "[W]hen I was in the role of superintendent, we put in place the eighth period stipend. It meant that the four periods, a three-hour time block in the morning and in the afternoon, was taught by the teachers. Most teachers had assignments, instructional assignments, for seven periods, or assignment teaching and a duty assignment for seven periods. So, if a teacher had students, and they've had them in the instructional setting for four periods in the morning, four periods in the afternoon, they qualified for the eighth period stipend."

{¶105} Mr. Schultz clarified that "instruction" meant the teachers were in an assigned class period with students for the purpose of instruction or teaching.

31

{¶106} Mr. Schultz testified, in his estimation, the Eighth Period Stipend commenced between 2000 and 2002, between seven and nine years prior to its memorialization in the CBA. And he further clarified that he, in conjunction with the union, implemented the stipend because some teachers were teaching students eight periods per day and others were not. In effect, Mr. Schultz confirmed that the stipend was offered because certain teachers "working an extra period above the rest of the group."

{¶107} In light of the foregoing, we conclude the magistrate weighed each party's interpretation of Section 21.4 and, in light of the ambiguity previously identified by this court, considered the parties' past practices. In doing so, the magistrate determined that the Eighth Period Stipend was intended to compensate teachers who taught all eight periods of the day. The evidence submitted by CATA supports this conclusion. Thus, we hold that the magistrate did not err in ruling that CATA's interpretation was the intended meaning of Section 21.4 and that meaning is binding on the parties. Accordingly, the trial court did not abuse its discretion in adopting the magistrate's ultimate conclusion.

{¶108} The Board's seventh assignment of error lacks merit.

{¶109} For the reasons discussed in this opinion, the judgments of the Lake County Court of Common Pleas are affirmed.


THOMAS R. WRIGHT, P.J.,

MATT LYNCH, J.,

concur.

32

Case No. 2021-L-113